## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

ROCKY W.,[1]                          :    Case No. 3:22-cv-00124
                                      :
      Plaintiff,                 :
                                      :    Magistrate Judge Caroline H. Gentry
vs.                                   :    (by full consent of the parties)
                                      :
COMMISSIONER OF THE SOCIAL            :
SECURITY ADMINISTRATION,              :
                                      :
      Defendant.                 :

---

## DECISION AND ORDER

---

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in June 2019. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.    BACKGROUND

Plaintiff asserts that he has been under a disability since December 1, 2018. At that time, he was fifty-six years old. Accordingly, Plaintiff was considered a "person of advanced age" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e).[2] Plaintiff has a "marginal education." *See* 20 C.F.R. § 404.1564(b)(2).

The evidence in the Administrative Record ("AR," ECF No. 10) is summarized in the ALJ's decision (AR, ECF No. 10-2 at PageID 45-58), Plaintiff's Statement of Errors ("SE," ECF No. 11), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," ECF No. 12), and Plaintiff's Reply Memorandum ("Reply," ECF No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

Step 1:    Plaintiff has not engaged in substantial gainful activity since December 1, 2018, the alleged onset date.

Step 2:    He has the severe impairments of degenerative joint disease of the right knee, obesity, depressive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD).

Step 3:    He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of medium work as defined in 20 C.F.R. § 404.1567(c), subject to the following limitations: "(1) frequent crouching, crawling, kneeling, stooping and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) limited to performing simple, routine, repetitive tasks; (5) infrequent superficial contact with co-workers and supervisors (superficial contact is defined as able to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts); (6) no public contact; (6) limited to jobs which involve very little, if any, change in the job duties or the work routine from one day to the next."

He is unable to perform any of his past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

(AR, ECF No. 10-2 at PageID 47-58.) The ALJ concluded that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 58.)

## B.    The ALJ's Symptom Severity Analysis

The ALJ explained the applicable legal standard for evaluating Plaintiff's symptoms when determining the RFC, as follows:

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative

medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

In considering [Plaintiff's] symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce [Plaintiff's] pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce [Plaintiff's] pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if [Plaintiff's] symptoms limit the ability to do work-related activities.

[Plaintiff's] statements about the intensity and persistence of symptoms, such as pain, will not be rejected solely because the available objective medical evidence does not substantiate the statements. Symptoms, such as pain, are subjective and difficult to quantify. All of the following were, therefore, taken into account: any medically determinable impairment resulting in symptom-related functional limitations and restrictions which the claimant, the treating or examining physician or psychologist, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence. Factors relevant to assessing pain or other symptoms include:

> (i) Daily activities;
> (ii) The location, duration, frequency, and intensity of the pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;
> (v) Treatment, other than medication, received for relief of pain or other symptoms;
> (vi) Any measures used to relieve the pain or other symptoms; and
> (vii) Other factors concerning the functional limitations and restrictions due to pain or other symptoms.

Symptoms, including pain, will be found to diminish [Plaintiff's] capacity
for basic work activities under certain circumstances. Such circumstances
arise if the extent that the alleged functional limitations and restrictions due
to symptoms can reasonably be accepted as consistent with the objective
medical evidence and other evidence (20 CFR 404.1529, 416.929 and
Social Security Ruling 16-3p).

(AR, ECF No. 10-2 at PageID 51-52.)

At Step Three and in the RFC analysis, the ALJ summarized Plaintiff's symptoms

and other subjective complaints. For example:

- [Plaintiff] does complain of difficulty comprehending things due to
  difficulty with reading and writing as well as being forgetful . . .
  (AR, ECF No. 10-2 at PageID 49);

- [Plaintiff] reports experiencing symptoms such as feeling down,
  wanting to be alone, feeling the world is a bad place, low self-
  esteem, feeling hopeless, not trusting people, worrying, and avoiding
  people . . . . He is also noted to suffer from flashbacks, nightmares,
  distressing memories, emotional distress and physical reactions from
  external cues, avoiding things that remind him of the traumas,
  negative thoughts about himself, the world and others, detachment
  from others, lack of interest in activities, easily startled, irritability,
  trouble sleeping, and being on guard . . . . While in prison, [Plaintiff]
  preferred being in the "hole" because he felt safer. It is also noted
  that in prison he experienced and participated in physical alterations
  [sic] . . . (*Id.*);

- Within the record, when asked about his previous work performance
  and attendance, [Plaintiff] reported above average work attendance
  and exemplary work performance . . . . However, it is also noted in
  the record that [Plaintiff] would miss work after one or two days due
  to anxiety . . . . (*Id.*);

- [Plaintiff] is also noted to report worsening of his ability to
  concentrate, difficulty sleeping, inability to focus, inability to
  complete tasks, becoming side tracked, forgetting appointments,
  decreased energy and motivation to finish home renovation projects,
  and impaired attention . . . (*Id.* at PageID 50); and

- [Plaintiff] is also remarked to complain of anxiety and depression, worrying, racing thoughts, depressed mood, inability to focus, mood swings, heart palpitations, nightmares, hypervigilance, and high appetite . . . . He reports that due to his mental health impairments, [he] goes to the store at night . . . . (*Id.*)

The ALJ concluded:

The extent of (physical and mental) limitation alleged is largely unsubstantiated by convincing objective medical evidence or clinical findings. The evidence generally does not support the alleged loss of functioning. [Plaintiff] has sufficient physical capacity and adequate mental acuity to live independently. [Plaintiff] has had no more than conservative treatment for his impairments. Although he contends that his mental health impairments significantly affect his ability to work, as explained herein the objective evidence of record simply does not support that [Plaintiff's] cognitive functioning is limited to a degree that would be considered disabling.

Given the largely normal findings upon examination, it appears that [Plaintiff] has rather intact physical and mental capabilities. After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id.* at PageID 52.)

## IV. LAW AND ANALYSIS

Plaintiff contends that the ALJ reversibly erred in "evaluating Plaintiff's mental RFC and symptom severity" and so failed to carry the Step Five burden. (SE, ECF No. 11 at PageID 701.) For the reasons discussed below, Plaintiff's assertions are not well-taken.

### A. The ALJ's RFC Is Supported By Substantial Evidence

A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). Determination of the RFC is

a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of limitations from his impairments and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Plaintiff argues that the ALJ's RFC does not fully account for his mental impairments and contends that it should have included a limitation for two absences per month. (SE, ECF No. 11 at PageID 701-02.) Plaintiff further argues that because such a limitation would preclude competitive, full-time employment, the ALJ "failed to carry the Step Five burden." (*Id.* at PageID 702.) These contentions are not well-taken.

As an initial matter, Plaintiff's argument fails because it is based on speculation. The record contains no medical opinion that Plaintiff would require two absences from work per month that would preclude competitive employment. Plaintiff instead cites to testimony, as well as several treatment notes and examination findings, and he essentially challenges the ALJ's interpretation of the record. (SE, ECF No. 10 at PageID 701-04.) Yet as indicated above, the substantial evidence standard precludes this Court from weighing the evidence and deciding whether the preponderance of the evidence supports

9

a different conclusion. *Biestek*, 139 S. Ct. at 1154 (2019). This Court is limited to determining whether the ALJ's findings are supported by substantial evidence.

The Court concludes that the ALJ's findings are, in fact, supported by substantial evidence.[3] The ALJ acknowledged many of Plaintiff's subjective complaints, which included anxiety, depression, worry, racing thoughts, decreased energy and motivation, an inability to focus, impaired attention, mood swings, nightmares, flashbacks, hypervigilance, low self-esteem, hopelessness, irritability, lack of interest in activities, and guardedness. (AR, ECF No. 10-2 at PageID 49-50.) The ALJ also acknowledged Plaintiff's statement to a medical provider that he would "miss work after one or two days due to anxiety. . . ." (AR, ECF No. 10-2 at PageID 50.) The ALJ then summarized the medical records that documented Plaintiff's treatment for his mental impairments. (*Id.* at PageID 49-50, 54-55.) He acknowledged many of the abnormal examination findings which included a depressed mood, an abnormal mood and affect, impulsive decision-making, and impaired attention and concentration. (*Id.*) The ALJ compared these findings to other examinations which showed coherent thought processes, intact memory, a normal fund of knowledge, average eye contact, a pleasant and/or cooperative attitude,

---

[3] The ALJ discussed much of the evidence at Step Three and then referred to his Step Three discussion in the RFC analysis. (*See* AR, ECF No. 10-2 at 49-55.) Sixth Circuit precedence establishes that this Court may consider the evaluation of the evidence at other steps of the decision to determine how to "credit the evidence at issue in this appeal." *See, e.g., Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. Appx. 426, 435 (6th Cir. 2014); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016). Accordingly, this Court will consider the ALJ's evaluation of Plaintiff's mental impairments earlier in Step Three and in the RFC analysis when evaluating Plaintiff's assignment of error.

appropriate insight, fair judgment, good impulse control, and no perception abnormalities or delusions. (*Id.* at PageID 49-50.)

The ALJ concluded that the balance of the objective evidence did not support Plaintiff's allegations of disabling symptoms. (AR, ECF No. 10-2 at PageID 52.) The ALJ nevertheless accounted for this evidence by limiting Plaintiff to simple, routine, and repetitive tasks that involve infrequent and superficial contact[4] with co-workers and supervisors, no public contact, and very little, if any, change in the job duties or the work routine from one day to the next. (*Id.* at PageID 51.) Because these conclusions are supported by substantial evidence, the ALJ did not err by failing to include additional mental limitations in the RFC.

Plaintiff takes issue with the ALJ's statement that "[g]iven the largely normal findings upon examination, it appears that [Plaintiff] has rather intact physical and mental capabilities." (SE, ECF No. 11 at PageID 701 (citing AR, ECF No. 10-2 at PageID 52).) Plaintiff contends that mental status examinations throughout the record "consistently and repeatedly document anxiety at nearly every assessment, in addition to intermittent signs and symptoms including depression, blunted affect, and nervous affect." (SE, ECF No. 11 at PageID 701.) According to Plaintiff, "anxiety and depression in and of themselves can be severely debilitating conditions, regardless of whether some other mental status exam findings are not abnormal." (*Id.*)

---

[4] The ALJ defined superficial contact as "able to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts." (AR, ECF No. 10-2 at PageID 51.)

The ALJ acknowledged that Plaintiff's medical providers diagnosed depression and anxiety, among other conditions. (AR, ECF No. 10-2 at PageID 50.) Nevertheless, a diagnosis alone does not indicate the severity of an impairment, much less show that the impairment is disabling. *See, e.g., Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013). The ALJ summarized both the abnormal and normal objective mental status examination findings in the record. He balanced this evidence—as well as Plaintiff's subjective complaints and other evidence—and concluded that Plaintiff's allegations of symptom severity were not fully supported. For the reasons discussed above, these conclusions are supported by substantial evidence.

The medical opinion evidence also supports the ALJ's conclusions. The record contains no medical opinion that would support additional mental functional limitations, beyond those identified by the ALJ. The ALJ evaluated the State agency psychological consultants' findings pursuant to 20 C.F.R. § 404.1520c. (AR, ECF No. 10-2 at PageID 54-56.) The consultants found that Plaintiff experienced no more than moderate impairment in the "Paragraph B" areas of functioning. (AR, ECF No. 10-3 at PageID 99, 102-03, 119, 112-23.) They opined that Plaintiff could understand and remember "repetitive, short cycle and some moderately complex tasks" in a "low stress, consistent setting with clear performance expectations and relatively static duties." (*Id.*) The consultants also opined that Plaintiff was limited to superficial and infrequent contact with the public, coworkers, and supervisors. (*Id.*) The ALJ concluded that these assessments were persuasive. (AR, ECF No. 10-2 at PageID 55.)

12

The ALJ complied with applicable regulations when he discussed the evidence that the consultants reviewed which supported their opinions, and when he evaluated the consistency of their opinions with the examination findings and other evidence of record. (*Id.* at PageID 54-56.) The ALJ recognized the "medical specialty, Social Security disability programs expertise, and extensive experience evaluating Social Security disability cases" of the consultants (*Id.* at PageID 55-56), which is an appropriate factor to consider under 20 C.F.R. § 404.1520c(c)(4). Moreover, the ALJ explained that he included additional limitations in the RFC to further account for the medical records and Plaintiff's subjective complaints. (*Id.* at PageID 55.) Notably, Plaintiff does not argue that the ALJ failed to comply with applicable regulations in his analysis of the medical opinion evidence. (SE, ECF No. 11 at PageID 701-04.)

Taken together, the evidence cited by the ALJ constitutes substantial evidence—that is, "relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (*Biestek*, 139 S. Ct. at 1154)—that supports the ALJ's RFC. Because the ALJ's findings are supported by substantial evidence, they cannot be disturbed by this Court even if substantial evidence in the record would support the opposite conclusion. *Key*, 109 F.3d at 273.

### B.    The ALJ Did Not Reversibly Err in Evaluating Plaintiff's Symptom Severity

As the ALJ correctly noted, a Social Security regulation governs the evaluation of Plaintiff's symptoms. 20 C.F.R. § 404.1529. Further, when a claimant alleges symptoms of disabling severity, the Social Security Administration requires ALJs to use a two-step

process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).[5]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other

---

[5] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id.* The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

Here, the ALJ complied with the two-step process required by 20 C.F.R. § 404.1529 and SSR 16-3p. Specifically, the ALJ determined that Plaintiff has medically determinable impairments (degenerative joint disease of the right knee, obesity,

depressive disorder, anxiety disorder, PTSD, partial amputation of the third finger of the left hand, and supraventricular tachycardia) that could reasonably cause some of the alleged symptoms. (AR, ECF No. 10-2 at PageID 48, 52.) The ALJ then considered the evidence in the record and found that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 52.) Because the ALJ's findings are supported by substantial evidence, the Court must affirm the ALJ's decision.

Plaintiff challenges the ALJ's findings at the second step of the analysis, arguing that objective mental status examinations and Plaintiff's treatment history support his allegations of symptom severity. (*See* SE, ECF No. 11 at PageID 701-04; Reply, ECF No. 13 at PageID 727-29.) But the ALJ appropriately evaluated Plaintiff's mental health symptoms—including his treatment history—pursuant to the applicable regulations. Substantial evidence supports the ALJ's conclusions, and so the Court must affirm the ALJ's decision.

As discussed above, the ALJ summarized Plaintiff's subjective complaints related to his mental impairments. At Step Three and in the RFC analysis, the ALJ noted that Plaintiff complained of symptoms such as anxiety, depression, worry, racing thoughts, decreased energy and motivation, an inability to focus, impaired attention, mood swings, nightmares, flashbacks, hypervigilance, low self-esteem, hopelessness, irritability, lack of interest in activities, and guardedness. (AR, ECF No. 10-2 at PageID 49-50, 54-55.) The ALJ also acknowledged Plaintiff's statement to a medical provider that he would "miss work after one or two days due to anxiety. . . ." (*Id.* at PageID 50.) The ALJ cited medical

16

records that documented Plaintiff's treatment for his mental impairments, and he acknowledged many of the abnormal examination findings which included a depressed mood, an abnormal mood and affect, impulsive decision-making, and impaired attention and concentration. (*Id.* at PageID 49-50, 54-55.)

The ALJ compared this evidence to other records that showed coherent thought processes, intact memory, a normal fund of knowledge, average eye contact, a pleasant and/or cooperative attitude, appropriate insight, fair judgment, good impulse control, and no perception abnormalities or delusions. (AR, ECF No. 10-2 at PageID 49-50.) The ALJ concluded that the balance of the evidence did not support Plaintiff's allegations of symptom severity. (AR, ECF No. 10-2 at PageID 52.) The ALJ accounted for this evidence by limiting Plaintiff to the mental restrictions in the RFC. (*Id.* at PageID 51.) The Court finds that the ALJ's conclusions are supported by substantial evidence and therefore must be affirmed.

Plaintiff contends that the ALJ erred because he "conceded that it is 'noted in the record that [Plaintiff] would miss work after one or two days due to anxiety' . . . but inexplicably failed to explain why this limitation was not considered in his RFC determination." (SE, ECF No. 11 at PageID 702 (citing AR, ECF No. 10-7 at PageID 446.) This contention is not well-taken.

As an initial matter, the note cited by Plaintiff appears in the subjective complaints section of a September 2019 Access Counseling Services' treatment record. (AR, ECF No. 10-7 at PageID 446.) The note constitutes the provider's summary of what Plaintiff told her about his attendance at past jobs, rather than her opinion on the issue. (*Id.*) The

17

ALJ therefore was not required to evaluate this statement under the rules for evaluating medical opinions.

Plaintiff's argument, then, essentially asserts that the ALJ must individually address each and every symptom and subjective complaint. But the Sixth Circuit requires only that the ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Wilson v. Comm'r of Soc. Sec.*, 618 F. App'x 281, 286 (6th Cir. 2015). There is no requirement that an ALJ specifically analyze each and every symptom and complaint. Indeed, courts have rejected Plaintiff's assertion. *See, e.g.*, *Kohler v. Colvin*, No. 3:14-cv-00163, 2015 WL 3743285, at *5 (S.D. Ohio June 15, 2015) (Ovington, M.J.) ("The ALJ was not required to accept as true every symptom [the plaintiff] reported and provide a corresponding limitation in the [RFC] assessment to account for it."), report and recommendation adopted, 2015 WL 4214469 (S.D. Ohio July 10, 2015) (Rose, D.J.); *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 792, 807 (E.D. Mich. 2013) ("As long as the final decision incorporates all of the claimant's impairments—and here, the ALJ stated she did consider all of [the claimant's] 'subjective symptoms and complaints'—the fact an ALJ did not specifically state every piece of evidence or every symptom is not an error."); *Chandler v. Comm'r of Soc. Sec.*, No. 2:13-CV-324, 2014 WL 2988433, at *11 (S.D. Ohio July 1, 2014) (Kemp, M.J.) ("[T]he fact an ALJ did not specifically state every piece of evidence or every symptom is not an error.")

18

Here, the ALJ acknowledged that Plaintiff told his provider he had missed work after one or two days due to anxiety, and stated that he considered "all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" pursuant to 20 C.F.R. § 404.1529 and SSR 16-3p. (AR, ECF No. 10-2 at PageID 50-51.) The ALJ's Step Two, Step Three, and RFC analyses incorporate all of Plaintiff's impairments. The ALJ's detailed evaluation of Plaintiff's symptom severity comports with SSR 16-3p and is supported by substantial evidence. Further, the ALJ accounted for Plaintiff's social anxiety in the RFC. Specifically, the ALJ weighed Plaintiff's subjective complaints with the balance of the objective evidence, and he limited Plaintiff to a range of simple, routine tasks with infrequent and superficial contact with coworkers and supervisors, and no public contact. (AR, ECF No. 10-2 at PageID 51.) The ALJ's analysis complied with the applicable regulations and rulings and governing case law. No more was required.

Plaintiff also contends that the ALJ failed to adequately consider Plaintiff's attempts to seek treatment for his mental symptoms. (SE, ECF No. 11 at PageID 703-04.) Plaintiff asserts that he was "tried on a variety of different medications, and his medications were frequently adjusted/changed." (*Id*. at PageID 703 (citing AR, ECF No. 10-7 at PageID 446, 470, 485, 553-54, 561; AR, ECF No. 10-9 at PageID 660-61, 670-71).) But the ALJ did consider Plaintiff's treatment history. For example, the ALJ noted that Plaintiff was seeing psychiatry twice per month for psychotropic medication and was participating in weekly counseling sessions. (AR, ECF No. 10-2 at PageID 50.) The ALJ

concluded that Plaintiff "appear[ed] to have adequate management of his symptoms" with treatment. (AR, ECF No. 10-2 at PageID 50.)

This conclusion is supported by substantial evidence in the record. The medical records show that Plaintiff was receiving outpatient mental health treatment at Solutions Community Counseling and Recovery Centers (SCCRC) as of November 2018. (AR, ECF No. 10-7 at PageID 368.) Plaintiff told Jaime Adleta, A.P.R.N. in December 2018 that his primary care physician had prescribed Wellbutrin but he had not experienced much improvement. (*Id.* at PageID 393.) Ms. Adleta added Topamax to Plaintiff's medication regimen. (*Id.* at PageID 397.) Plaintiff reported no improvement at the next visit (*id.* at PageID 417), and apparently did not return for any additional treatment with SCCRC. (*See* AR, ECF No. 10-9 at PageID 652.)

Instead, approximately six months later in June 2019, Plaintiff began treatment at Access Counseling. Plaintiff's psychiatrist prescribed Adderall and melatonin in September 2019. (AR, ECF No. 10-7 at PageID 422, 446.) Plaintiff said that he did not want to take antidepressants at that time. (*Id.*) He eventually agreed to start medication for depression, anxiety, and sleep difficulties in October 2019, and his psychiatrist added those medications to his regimen. (*Id.* at PageID 470.) Plaintiff stated in December 2019 that his depression was "off and on"—although with "more good days than bad"—and so his psychiatrist increased his Wellbutrin dosage. (*Id.* at PageID 485.) Plaintiff reported that his sleep had improved and his anxiety and inattention were stable, so his psychiatrist made no changes to his dosages of Trazodone or Adderall. (*Id.*) In February 2020, Plaintiff's psychiatrist increased his Adderall dosage after Plaintiff complained that the

Adderall was "wear[ing] off too soon" and was "impact[ing] his ability to continue repairs to his house." (*Id.* at PageID 544.) In April 2020, Plaintiff said that his inattention had improved with the increased Adderall dose. (*Id.* at PageID 555.) He also reported having a "good" mood, said his nightmares had resolved with Proazosin, and reported that his depression and anxiety were well-controlled. (*Id.*)

Plaintiff complained of some increased symptoms in June and July of 2020. In June 2020, he reported having issues with focus, concentration, and staying on task. (AR, ECF No. 10-7 at PageID 560.) He reported paranoia and nightmares. (*Id.*) He said that although his depression was improved, it was a seven out of ten (with ten being the worst depression). (*Id.*) Despite these increased symptoms, Plaintiff said he was "doing well" overall (*Id.*) In July 2020, Plaintiff reported increased depression (a ten out of ten) and continued difficulties with sleep and nightmares. (*Id.* at PageID 657.) Plaintiff's psychiatrist adjusted Plaintiff's medications at that time. (*Id.* at PageID 658.)

Plaintiff complained of continued sleep difficulties at his next visit in August 2020, although he admitted to drinking at least six cups of "high potency coffee" each day. (AR, ECF No. 10-9 at PageID 670.) Michelle McBride, D.N.P. advised Plaintiff to eliminate all caffeine and explained that "this is the reason [that] he is not sleeping." (*Id.*) Ms. McBride also started Plaintiff on a trial of Seroquel in response to his report that his depression was not improving. (*Id.*)

A few months later in November 2020, Plaintiff reported continued symptoms of depression, anxiety, paranoia, and ADHD, but also fewer nightmares. (AR, ECF No. 10-9 at PageID 686.) Plaintiff reported palpitations in January 2021, but these were attributed

to his recent COVID-19 diagnosis. (*See* AR, ECF No. 10-9 at PageID 631, 690, 692.) Plaintiff also complained of mood swings, anxiety, racing thoughts, and depression. (*Id.* at PageID 692, 695.) However, although his mental status examinations during that time showed anxious and/or depressed moods, Plaintiff's providers otherwise documented cooperative behavior, logical thought processes, intact recent and remote memory, normal focus and concentration, and good insight and judgment. (*Id.*)

The ALJ's conclusions regarding Plaintiff's treatment are supported by substantial evidence. Additionally, the ALJ did not find that Plaintiff's treatment was so effective that he did not need any work restrictions. Instead, the ALJ concluded that Plaintiff's treatment provided only "adequate" management of his symptoms, and accounted for this fact by limiting Plaintiff to simple, routine, and repetitive tasks involving superficial contact with coworkers and supervisors, no public contact, and few changes in job duties. (AR, ECF No. 10-2 at PageID 50-51.) Because the ALJ's findings are supported by substantial evidence, they cannot be disturbed by this Court even if there were substantial evidence in the record that would support the opposite conclusion. *Key*, 109 F.3d at 273.

Finally, Plaintiff's assertion that the ALJ failed to carry the Step Five burden is not well-taken. When formulating a hypothetical question for the vocational expert (VE), the ALJ is required to incorporate "only those limitations that he accepts as credible." *Griffeth*, 217 F. App'x at 429 (quoting *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). "[A]n ALJ is not required to accept a claimant's subjective complaints, and 'can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate.'" *Griffeth*,

217 F. App'x at 429 (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). The ALJ may rely on the VE's testimony that "such a hypothetical person can perform a certain job." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002).

Here, the ALJ asked the VE at the February 2021 hearing whether an individual with the RFC identified in the decision could perform Plaintiff's past relevant work, as well as any other work in the national economy. (AR, ECF No. 10-2 at PageID 88.) The VE testified that such an individual would be unable to perform Plaintiff's past relevant work but could perform other jobs in the national economy. (*Id.*) In response to additional hypothetical questions, the VE testified that "absenteeism at a rate of two times monthly" would preclude competitive employment. (*Id.* at PageID 89.)

Plaintiff's argument presumes that the hypothetical posed to the VE regarding absenteeism accurately represents Plaintiff's RFC. But as discussed above, no medical source opined that Plaintiff would require additional mental limitations—much less a limitation allowing two absences per month. Accordingly, this portion of the vocational expert's testimony did not need to be accounted for in the ALJ's decision.

A disability claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512. The burden is on the claimant to furnish medical and other evidence about his impairments and the effects of his impairments on the ability to work. *Id.* Here, Plaintiff has not shown that the ALJ erred by failing to include additional restrictions in the RFC, specifically a limitation that allows two absences from work per month. As discussed above, the ALJ thoroughly

evaluated the medical and other evidence related to Plaintiff's mental impairments and symptom severity, and explained his reasons for including the functional restrictions in the RFC. (AR, ECF No. 10-2 at PageID 49-56.) Plaintiff has not shown that the evidence before the ALJ required the inclusion of greater limitations than those identified by the ALJ. Nor has Plaintiff shown that the ALJ erred by declining to rely on VE testimony that did not accurately reflect Plaintiff's functional limitations. Plaintiff has not met his burden of proving that the ALJ's decision is unsupported by substantial evidence.

## VI.  CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal framework and substantial evidence supports his conclusions. Specifically, the ALJ evaluated Plaintiff's symptom severity pursuant to the applicable regulations, including Social Security Ruling 16-3p, and the ALJ's RFC is supported by substantial evidence. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (ECF No. 11) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

*s/Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge